IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALUSINE CONTEH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-cv-03032-LKG |
| DIVERSIFIED PROTECTION CORPORATION, *et al.*, | ) ) Dated: March 24, 2022 ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Plaintiff, Alusine Conteh, brings this employment discrimination action against Diversified Protection Corporation ("DPC") and Triple Canopy, Inc. ("TCI"), alleging national origin and sexual orientation discrimination, hostile work environment, and retaliation claims, pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and the Maryland Fair Employment Practices Act, Md. Code State Gov't § 20-601 to -611 ("MFEPA"). *See generally* Am. Compl., ECF No. 17. Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6). *See generally*, Def. DPC Mot., ECF No. 18; Def. DPC Mem., ECF No. 18-1; Def. TCI Mot, ECF No. 19; Def. TCI Mem., ECF No. 19-1.  For the reasons that follow, the Court **GRANTS-in-PART** and **DENIES-in-PART** defendants' motions to dismiss and **DISMISSES** the amended complaint.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

**A.    Factual Background**

Plaintiff, Alusine Conteh, is an immigrant from Sierra Leone. Am. Compl. at ¶ 7. Defendants DPC and TCI are security companies headquartered in Las Vegas, Nevada and Reston, Virginia, respectively. *Id.* at ¶¶ 4-5.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the amended complaint ("Am. Compl.") and defendants' motions to dismiss ("Def. DPC Mot." and "Def. TCI Mot.") and memoranda in support thereof ("Def. DPC Mem." and "Def TCI Mem.").

In September 2016, plaintiff was employed by defendant DPC as a protective security officer, and he was assigned to provide security at Silver Spring Metro Center One, located at 1335 East-West Highway, Silver Spring, Maryland. *Id.* at ¶ 8. In January 2018, plaintiff was also employed as a protective security officer by Defendant TCI and he was assigned to provide security at the Food and Drug Administration Buildings, located at 10903 New Hampshire Avenue in White Oak, MD. *Id.* at ¶ 9.

Plaintiff's supervisor for both jobs was Lieutenant Alan Patterson, who was an employee of both defendants. *Id.* at ¶ 10. Lieutenant Patterson's supervisor was Project Manager Paul Caruso. *Id.*

Plaintiff alleges that, during the period September 11, 2015, to November 6, 2018, his co-worker, Linzy Youmans "continuously subjected [him] to national origin-based and perceived sexual orientation-based discriminatory harassment while employed and working for Defendant DPC in Silver Spring, MD." *Id.* at ¶ 12. Plaintiff also alleges that, during the period January 1, 2018, to November 6, 2018, Mr. Youmans "continuously subjected [him] to national origin-based and perceived sexual orientation-based discriminatory harassment while employed and working for Defendant TCI in White Oak, MD." *Id.* at ¶ 13.

In this regard, plaintiff alleges that Mr. Youmans' "discriminatory harassment was in the form of, but not limited to, anti-immigrant and homophobic remarks" made toward him, "including comments on [his] perceived sexual orientation, making comments that [he] did not have sexual relations with female employees in the buildings [he] staffed and that [p]laintiff did not have a relationship with a female and did not have children." *Id.* at ¶ 14. Plaintiff further alleges that Mr. Youmans' remarks included: "'I don't like Africans,' 'He has no kids; he must be gay,' 'He doesn't sleep with women because he's gay,' 'I can't believe you haven't slept with her. You must be gay,' and 'Look at him. He's thirty-five and has no kids. He must be gay.'"[2] *Id.*

---

[2] Plaintiff alleges that Mr. Youmans engaged in "numerous attempts at physical altercations with [him,]" and that Mr. Youmans threatened to "blow [his] brains out" with his gun on or about September 26, 2018. Am. Compl. at ¶ 14. Plaintiff further alleges that, in November 2018, he was falsely accused of engaging in fraudulent activity. *Id.* at ¶ 18.

2

In addition, plaintiff contends that other DPC employees who are not from Sierra Leone, and who are heterosexual, including, Linzy Youmans, Rason Aton, and Phillis Montgomery, "were not mistreated as [he] was by defendant DPC, even though they had [Lieutenant] Patterson as a supervisor." *Id*. at ¶ 25. Plaintiff also contends that other TCI employees who are not from Sierra Leone, and who are heterosexual, including, Linzy Youmans, Dominic Paul, Ribert Michel, and Tony Diggs, "were not mistreated as [he] was by Defendant TCI, even though they all had [Lieutenant] Patterson as a supervisor." *Id*. at ¶ 26.

In this regard, plaintiff alleges that he made several complaints about Mr. Youmans' "anti-immigrant and homophobic remarks" to Lieutenant Patterson and Project Manager Caruso between 2015 to 2018, but defendants did not address his concerns. *Id.* at ¶ 15. It is undisputed that, on or about October 11, 2018, plaintiff filed a report about this treatment at work with the Federal Protective Services. *Id*. at ¶ 16; Def. DPC Mem. at 12; Def.; TCI Mem. at 13.

Plaintiff alleges that defendants knew about this report, and that defendants denied his request to transfer to a different job site, reduced his work hours, and removed him from the work schedule, in retaliation for making this report and filing other complaints. *Id*. at ¶ 17. It is undisputed that plaintiff was suspended from work during the period November 1, 2018, to November 14, 2018. *Id*. at ¶ 19; *see generally* Def. DPC Mem. (not disputing that plaintiff was suspended in November 2018); Def. TCI Mem. (same). Thereafter, plaintiff alleges that he reported his concerns about harassment, intimidation, bullying, and threats of violence at his workplace to a union representative. *Id*. at ¶ 20. Plaintiff alleges that defendants also knew about this complaint. *Id.* at ¶ 27. Plaintiff's employment with both defendants was terminated in 2019.

### B. Procedural Background

Plaintiff commenced this employment discrimination action on October 19, 2020. *See* Compl., ECF No. 1. After defendants moved to dismiss the case, plaintiff filed an amended complaint on April 23, 2021. *See* Am. Compl.

On May 7, 2021, defendants filed their respective motions to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and memorandums in support thereof. Def. DPC Mot.; Def. DPC Mem.; Def. TCI Mot.; Def. TCI Mem. On June 16, 2021, plaintiff filed responses in opposition to defendants' motions. Pl. Resp. DPC, ECF No. 24;  Pl. Resp. TCI,

ECF No. 25. On June 30, 2021, defendants filed their reply briefs. Def. DPC Reply, ECF 26; Def. TCI Reply, ECF No. 27.

Defendants' motions to dismiss having been fully briefed, the Court resolves the pending motions.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombley*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

#### B. Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e.[3] There are two methods for proving intentional

---

[3] Plaintiff also alleges that defendants violated the MFEPA. *See* Md. Code State Gov't § 20-601 to -611. The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc*., No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing of the administrative charge . . .; and (3) . . . the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code State Gov't. § 20-1013(a). When a plaintiff has not asserted a distinction between federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the

4

discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, "an employee may utilize ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (citation omitted). To overcome a summary judgment motion based upon this method of proof, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (citation omitted) (brackets existing)). And so, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (citation omitted).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Specifically relevant to this employment discrimination dispute, a plaintiff may establish a prima facie case of discrimination by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside [of] the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a prima facie case. *See Hemphill v. Aramark Corp.*, No. 12-1584, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised

---

state and federal discrimination claims. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

by the plaintiff's prima facie case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff also asserts retaliation and hostile work environment claims in this case. Pl. Am. Compl. at ¶¶ 36, 46, 56, 66, 68-81. To prove a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action at the hands of defendant; and (3) defendant took the adverse action because of the protected activity. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir.2001) (citing *Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 180 (4th Cir. 1998)). A plaintiff lacking direct evidence of retaliation may also utilize the *McDonnell Douglas* framework to prove a claim of retaliation. *See Foster v. Univ. of Md.*, 787 F.3d 243, 250 (4th Cir. 2015).

To show that an employer's stated legitimate nondiscriminatory reason for an adverse employment action is a pretext for retaliation, a plaintiff "must show that the adverse action would not have occurred 'but for' the protected conduct." *Dwyer v. Smith*, 867 F.2d 184, 191 (4th Cir. 1989) (quoting *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365-66 (4th Cir. 1985)). Given this, it is not enough to show that the plaintiff perceived the defendant's motives to be retaliatory; rather, the important inquiry is what actually motivated the defendant's decision. *See Evans*, 80 F.3d at 960 ("While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient."). In this regard, a plaintiff's self-assessment of his own abilities is also not sufficient to establish pretext or intentional retaliation. *Id.* at 959 (citation omitted). Rather, a plaintiff must produce objective evidence that the defendant's stated reasons are mere pretext and that the defendant's actions were the product of retaliatory intent, to avoid summary judgment on the issue of intentional retaliation. *See Csicseri v. Bowsher*, 862 F. Supp. 547, 570-71 (D.D.C. 1994), *aff'd*, 67 F.3d 972 (D.C. Cir. 1995).

Lastly, to defeat a motion for summary judgment filed by a defendant employer related to a hostile work environment claim, plaintiff must demonstrate that a reasonable jury could find

the defendant's harassment was: "(1) unwelcome; (2) based on [the protected class]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *See Spriggs*, 242 F.3d at 183; *see also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998). But, even if the record supports the conclusion that a triable issue exists with regard to the aforementioned three elements of a hostile work environment, a plaintiff may not prevail absent sufficient evidence that there is some basis for imposing liability on the defendant. *Spriggs*, 242 F.3d at 184; *see also Causey*, 162 F.3d at 801.

## IV.   LEGAL ANALYSIS

Defendants have moved to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6) for four reasons. First, Defendant TCI argues that plaintiff fails to allege sufficient facts in the amended complaint to support his employment discrimination claims against TCI. Def. TCI Mem. at 4.  In addition, both defendants argue that:  (1) the Court should dismiss plaintiff's hostile work environment claims in Counts I-IV of the amended complaint, because plaintiff fails to allege facts to show that the alleged discriminatory conduct at his workplace was severe and pervasive; (2) the Court should dismiss plaintiff's discrimination claims in Counts I-IV of the amended complaint, because plaintiff does not allege facts to show either a satisfactory job performance, an adverse employment action, or disparate treatment; and (3) the Court should dismiss plaintiff's retaliation claims in Counts V and VI of the amended complaint, because plaintiff fails to state plausible retaliation claims. Def. DPC Mem. at 4-13; Def. TCI Mem. at 4-15.

Plaintiff counters that he has alleged sufficient facts in the amended complaint to support his claims against TCI. Pl. Resp. TCI at 3. Plaintiff also argues that he asserts plausible hostile work environment, discrimination, and retaliation claims in the amended complaint. Pl. Resp. DPC at 3-15; Pl. Resp. TCI at 4-16. And so, plaintiff requests that the Court deny the defendants' motions to dismiss.  Pl. Resp. DPC at 15; Pl. Resp. TCI at 16.

For the reasons set forth below, plaintiff has alleged sufficient facts in the amended complaint to support his claims against TCI. But, plaintiff fails to state plausible hostile work environment claims in this case, because he does not sufficiently allege facts to show that the purported discriminatory conduct at his workplace was severe and pervasive. Plaintiff similarly fails to state plausible discrimination claims, because he does not allege facts to show either a satisfactory job performance, or that he suffered an adverse employment action because of his

7

protected characteristics. Lastly, plaintiff fails to state plausible retaliation claims, because he does not allege facts to show that defendants undertook the adverse employment actions at issue because of his protected activity. And so, the Court **GRANTS-in-PART and DENIES-in-PART** defendants' motions to dismiss and **DISMISSES** the amended complaint.

### A. Plaintiff Has Alleged Plausible Claims Against TCI

As an initial matter, plaintiff has alleged sufficient factual allegations in the amended complaint to bring his claims against defendant TCI. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the amended complaint must allege enough facts to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombley*, 550 U.S. at 570). And so, plaintiff's claims against TCI are plausible if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombley*, 550 U.S. at 556).

Plaintiff has satisfied this standard with regards to his claims against TCI. In the amended complaint, plaintiff alleges that he was employed as a protective service officer by TCI from on or about January 1, 2018, to November 2019. Am. Compl. at ¶¶ 9, 22. In addition, plaintiff alleges that, during this same time period, his co-worker, protective security officer Linzy Youmans, "continuously subjected [him] to national origin-based and perceived sexual orientation-based discriminatory harassment while employed and working for Defendant TCI." *Id.* at ¶ 13. The amended complaint also makes clear that plaintiff alleges disparate treatment while employed by TCI, because he alleges that other TCI employees who are not from Sierra Leone and who are heterosexual, "were not mistreated as [he] was by Defendant TCI, even though they all had [Lieutenant] Patterson as a supervisor." *Id.* at ¶ 26. Given these factual allegations, the amended complaint contains sufficient factual allegations to show that the alleged discriminatory conduct at issue in this case occurred while plaintiff was employed by, and working for, TCI. *Id.* at ¶¶ 13, 26. And so, the Court declines to dismiss plaintiff's claims against TCI.

### B. Plaintiff Fails To State Plausible Hostile Work Environment Claims

While plaintiff may pursue his claims against TCI, the Court agrees with defendants that plaintiff fails to state plausible hostile work environment claims against both defendants in this case. As the Fourth Circuit has explained, a hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

8

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (citation omitted). And so, to establish a hostile work environment in this case, plaintiff must demonstrate that a reasonable jury could find the defendants' harassment was: "(1) unwelcome; (2) based on [the protected class]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs,* 242 F.3d at 183.

Notably, element three of a hostile work environment claim requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Boyer–Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). Determining "[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see also Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 421 (4th Cir. 2014) ("This element of a hostile work environment claim has both subjective and objective parts.") (citation omitted). And so, such a "determination is made 'by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Boyer–Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 23).

Plaintiff has not alleged facts to show that the purported discriminatory conduct in this case is "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." In the amended complaint, plaintiff points to a single instance when his coworker, Mr. Youmans, remarked that "I don't like Africans," to show a hostile work environment based on his national origin. Am. Compl. ¶ 14. While plaintiff does allege that he was subjected to other anti-immigrant remarks in the workplace, he identifies no other specific instances of such conduct. *See generally id.* As this Court has previously recognized, a lone discriminatory remark, standing alone, is simply not sufficient to establish the "severe or pervasive" element of a hostile work environment claim. *See Lim v. Azar,* 310 F. Supp. 3d 588, 600 (D. Md. 2018) (finding plaintiff's supervisor's lone derogatory comment towards plaintiff that "I can't work with Korean like you" insufficient to establish a hostile work environment); *see also Butts v. Encore Mktg. Int'l*, No. CIV. PJM 10-3244, 2012 WL 3257595, at *4 (D. Md. Aug. 7, 2012) (without other specific examples, plaintiff's allegations are "too vague and conclusory to push his claim across the threshold of plausibility"). And so, the factual

9

allegations in the amended complaint are not sufficient to support a hostile work environment claim based on plaintiff's national origin.

Plaintiff's hostile work environment claim based upon his perceived sexual orientation is also problematic. To support this claim, plaintiff alleges that Mr. Youmans made remarks such as: "He has no kids; he must be gay;" "He doesn't sleep with women because he's gay;" "I can't believe you haven't slept with her. You must be gay;" and "Look at him. He's thirty-five and has no kids. He must be gay." Am. Compl. at ¶ 14. To be clear, the amended complaint contains more examples of remarks about plaintiff's perceived sexual orientation than about his national origin. But, the Court agrees with defendants that the totality of the circumstances of this case indicate that a reasonable person in plaintiff's position would not have viewed Mr. Youmans' remarks about plaintiff's perceived sexual orientation, alone, to be hostile or abusive. *Boyer–Liberto,* 786 F.3d at 277 ("A hostile [work] environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."). Notably, the remarks attributed to Mr. Youmans, while certainly offensive, do not include the types of epithets or extremely abusive language that courts have found to be sufficiently severe to create a hostile work environment. *See, e.g.*, *Spriggs*, 242 F.3d at 183 (reasoning that a reasonable jury could find that a workplace where a supervisor constantly referred to African Americans as "monkeys" was a hostile work environment); *see also White v. BFI Waste Svcs.*, *LLC*, 375 F.3d 288, 298 (4th Cir.2004) (reasoning that a reasonable jury could find harassment where supervisors referred to black employees by several offensive nicknames and epithets for many months repeatedly). In addition, the amended complaint makes clear that the remarks at issue were made by plaintiff's co-worker, rather than plaintiff's supervisor—an important factor that the Court considers when assessing the severity of the harassment. *Boyer-Liberto*, 786 F.3d at 278 ("In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.") (citation omitted).

The Court also observes that, while plaintiff alleges that Mr. Youmans made a verbal threat towards him, he points to no facts or evidence to show that this threat was because of his national origin or perceived sexual orientation. *See* Am. Compl. at ¶ 14. Given this, the facts alleged in the amended complaint, taken as true, make clear that Mr. Youmans' remarks were

10

offensive utterances that, alone, do not amount to a discriminatory hostile work environment. *See Boyd-Liberto* 786 F.3d at 286-87; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (citation omitted). And so, the Court DISMISSES plaintiff's hostile work environment claims in Count I, II, III and IV of the amended complaint. Fed. R. Civ. P. 12(b)(6).

### C.     Plaintiff Fails To State Plausible Discrimination Claims

Plaintiff also fails to state plausible discrimination claims in the amended complaint. To state a plausible discrimination claim under Title VII and MFEPA, plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Coleman*, 626 F.3d. at 190. While plaintiff need not satisfy these elements at the motion to dismiss stage of this litigation, he, nonetheless, must assert facts establishing the plausibility of the discrimination allegation. *Id.* at 190-91.

Here, defendants persuasively argue that plaintiff fails to allege plausible discrimination claims, because he cannot show that he had a satisfactory job performance, or that defendants undertook adverse employment actions because of his protected characteristics. Def. DPC Mem. at 7-11; Def. TCI Mem. at 4-9. First, the amended complaint is devoid of any facts to show that plaintiff had a satisfactory job performance when he was employed by TCI and DPC. Indeed, while plaintiff alleges in the amended complaint that his job performance was "outstanding," he provides no factual support to substantiate this allegation.[4] Am. Compl. at ¶ 11. Plaintiff's own opinions about his job performance, without more, is insufficient to show satisfactory job performance in connection with his employment discrimination claims.  *See Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (quoting *Evans*, 80 F.3d at 960-61); *see also King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *see also Iwebo v.*

---

[4] Plaintiff acknowledges in the amended complaint that he did not receive performance review documents while employed by defendants.  Am. Compl. at ¶ 11.

11

*Sheppard Pratt Health Sys., Inc*., No. 19-3008, 2020 WL 4748579, at *6 (D. Md. Aug. 14, 2020).

Even if plaintiff could show a satisfactory job performance, his discrimination claims would remain problematic, because he has not alleged facts to show that defendants undertook any of the identified adverse employment actions because of his national origin or perceived sexual orientation. Am. Compl. at ¶¶ 7, 10, 35, 39, 45; *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015*)* ("[N]aked allegations—a 'formulaic recitation' of the necessary elements—'are no more than conclusions and therefore do not suffice.") (citation omitted); *see also Tonin v. Balt. City Police Dep't*, No. 19-0323, 2020 WL3259083, at *8 (D. Md. June 16, 2020) (dismissing sex and national origin discrimination claims where plaintiff identified herself as an Italian female and her supervisors as American males but provided no other facts to support a reasonable inference that decisions were motivated by discriminatory animus). Given these deficiencies, the Court must dismiss plaintiff's discrimination claims in Counts I, II, III and IV of the amended complaint.[5] Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff Fails To State Plausible Retaliation Claims

As a final matter, a careful review of the amended complaint also makes clear that plaintiff fails to state plausible retaliation claims in this case. To prove retaliation, plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action at the hands of defendants; and (3) defendants took the adverse action because of the protected activity. *Spriggs*, 242 F.3d at 190 (citing *Gibson,* 160 F.3d at 180). Again, plaintiff fails to allege sufficient facts to make such a showing here.

In the amended complaint, plaintiff alleges that he engaged in protected activity when he: (1) complained to his supervisors on certain unspecified dates about Mr. Youmans' conduct; (2)

---

[5] Plaintiff similarly fails to allege sufficient facts to show that defendants treated him differently than other similarly situated employees outside of his protected class. *See* Am. Compl. ¶¶ 25-26. Plaintiff alleges that Mr. Youmans and other co-workers "were not subjected to the same discriminatory treatment," even though these employees held the same position and reported to the same supervisor as plaintiff. Am. Compl. ¶¶ 37, 47. But, plaintiff does not provide sufficient facts to explain how these employees are proper comparators, such as the employees' work histories and responsibilities. *See id.; see also Ryan v. McAleenan*, No. 19-1968, 2020 WL 1663172 (D. Md. Apr. 3, 2020) (quoting *McCleary-Evans*, 780 F.3d at 587) ("Absent allegations that plaintiff and the named employees are similarly situated in all relevant respects, only speculation can 'fill the gaps in [his] complaint.'").

12

made a complaint to the Federal Protective Services on October 11, 2018; and (3) complained to his union representative sometime between November 6, 2018, and December 5, 2018. Am. Compl. at ¶¶ 16, 20, 69, 76. Plaintiff also alleges that defendants retaliated against him for this protected activity by: (1) denying his requests for a transfer; (2) removing him from the work schedule; (3) suspending him; and (4) terminating his employment. *Id.* at ¶¶ 17-20. But, plaintiff cannot rely upon his complaints to the Federal Protective Services and his union representative to support his retaliation claims, because he fails to allege any facts to show that the deciding officials who undertook the adverse employment actions at issue knew of these complaints. *See Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 150 (D. Md. 2019) ("At minimum, for a causal connection to exist between a protected activity and an adverse employer action, the employer must know of the protected activity.") (citation omitted). Plaintiff's reliance upon the unspecified complaints to his supervisors is also misplaced, because he does not identify the dates on which these complaints were made to establish a causal connection between the complaints and the adverse employment actions. *See German v. Akal Sec.*, Inc., No. 11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011) (holding that an "allegation lack[ed] sufficient information to infer causality through temporal proximity" where the plaintiff provided no dates of her earlier complaints to her supervisors).

Because plaintiff fails to allege facts to show that defendants undertook the adverse employment actions at issue in this case due to his protected activity, the Court must DISMISS his retaliation claims in Counts V and VI of the amended complaint. Fed. R. Civ. P. 12(b)(6).

## V.     CONCLUSION

In sum, plaintiff has alleged sufficient facts in the amended complaint to support his employment discrimination claims against TCI. But, plaintiff fails to state plausible hostile work environment, discrimination and retaliation claims in this case.

13

And so, for the foregoing reasons, the Court:

1. **GRANTS-in-PART and DENIES-in-PART** defendants' motions to dismiss; and

2. **DISMISSES** the amended complaint.

**IT IS SO ORDERED.**


                                      s/Lydia Kay Griggsby
                                      LYDIA KAY GRIGGSBY
                                      United States District Judge